BRIDGESTONE/FIRESTONE, INC., T/A, ETC.

V.

PRINCE WILLIAM SQUARE ASSOCIATES

Record No. 950001

November 3, 1995

Present: All the Justices

D. Lee Rutland (*Wharton, Levin, Ehrmantraut, Klein & Nash*, on briefs), for appellant.

Bruce M. Blanchard (*Odin, Feldman & Pittleman*, on brief), for appellee.

JUSTICE STEPHENSON delivered the opinion of the Court.

The dispositive issue in this breach of warranty action is whether a limitation in the warranty applies to preclude the warrantor's liability.

I

Prince William Square Associates (Prince William) sued Bridgestone/Firestone, Inc. (Firestone), alleging that Firestone breached its warranty to repair its roofing system and seeking damages for the defective roof. A jury found in favor of Prince William and awarded damages of $322,090. The trial court entered judgment on the verdict, and Firestone appeals.

II

We will state the evidence in the light most favorable to Prince William, the prevailing party at trial. In 1985, Jamestown Properties, Inc., the general partner of a partnership known as Prince William Associates (Jamestown Properties), entered into a contract with a general contractor for the construction of the Prince William Square Shopping Center in Prince William County. The architect's specifications provided for the installation of a flexible sheet roofing system and identified seven manufacturers of acceptable roofing systems, including Firestone.

Thereafter, the general contractor entered into a subcontract with John H. Cole & Sons, Inc. (Cole), an independent roofing contractor that had been approved by Firestone to install its roof-

ing systems.[1] Cole agreed to "furnish all labor and materials" for the installation of a "complete single ply Firestone roofing system."

Cole submitted to Firestone a "PRE-INSTALLATION NOTICE," notifying Firestone that it had been awarded a contract to install a Firestone RubberGard EPDM Roof System at the shopping center. The Notice also requested that Firestone issue its "10 Year Material and Labor Warranty" upon Cole's payment for the materials and warranty and satisfactory installation of the roofing system.

Cole then purchased from Firestone and other suppliers the materials necessary to install the roofing system. The components of the Firestone RubberGard EPDM Roof System, according to Firestone's architectural specifications, were "roofing products by Firestone, or as accepted as compatible by Firestone Roofing Engineering Department but not warranted."

In accordance with the architect's specifications, Cole installed a layer of perlite board over the roof's corrugated metal deck and then placed expanded polystyrene (EPS) insulation over the perlite board. In further accordance with the architect's specifications, Cole secured the insulation with metal fasteners. Cole inserted the fasteners through round, plastic fastener plates that allowed the heads of the fasteners to be recessed into the plates. Although Firestone's architectural specifications provided that the insulation boards "shall be loosely laid," the specifications also provided that the "[i]nsulation may be pre-attached by Firestone accepted mechanical fastening system, provided that an accepted protection layer is installed over and completely covers the fastening system."

Cole then installed large sheets of ethylene propylene diene monomer (EPDM) membrane, a rubber material, over the insulation and sealed the edges. Finally, gravel ballast was placed on top of the membrane.

Firestone supplied, among other products, a single-ply EPDM membrane, lap sealant, splice adhesive, flashing material, preformed pipe boots, and metal batten bars. Firestone, however, did not supply the fasteners, fastener plates, EPS insulation, perlite board, or gravel ballast.

---

[1] Approved applicators have demonstrated competence in the installation of such roofing systems.

Cole completed the installation of the shopping center roofing system on February 24, 1986, and requested an inspection by Firestone. On April 7, 1986, a Firestone representative inspected the roof. By then, the only visible parts of the roofing system were the gravel ballast and the EPDM membrane. After Cole completed certain additional work required by the inspector, Firestone found the roof to be acceptable.

On March 4, 1986, prior to Firestone's inspection of the roof, Firestone issued to Jamestown Properties a "Limited Warranty."[2] This warranty states, in pertinent part, as follows:

> For a period of 10 (ten) years commencing from the date of final acceptance indicated above, Firestone . . . guarantees to the Building Owner ("Owner") above that, subject to the terms, conditions and limitations stated herein, Firestone will repair any leaks caused by workmanship or Firestone supplied materials in the RubberGard Roofing System at the above building. Firestone's repair obligations over the life of this guarantee are limited to the Owner's original cost of the RubberGard Roofing System installation.
>
> ### TERMS, CONDITIONS, LIMITATIONS
>
> . . . .
>
> 2. If upon inspection, Firestone determines that the leaks in the roofing system are caused by defects in the Rubber-Gard Roofing System material or workmanship of the Firestone Authorized Roofing Applicator (except as provided in paragraphs No. three (3) and No. four (4)) Owners remedies and Firestone liability shall be limited to Firestone repair of the leak subject to the cost limitation set forth above.
>
> . . . .
>
> 4. Firestone shall have no obligation under this warranty in the event that:
>
> . . .

---

[2] The warranty was issued under Firestone's "speedy warranty program." Pursuant to this program, a warranty is issued before Firestone's final acceptance in order to accelerate payments to an approved applicator.

(c) The Roof is damaged by use of materials not furnished by Firestone;

. . . .

THIS WARRANTY SUPERSEDES AND IS IN LIEU OF ALL OTHER WARRANTIES OR GUARANTEES WHETHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. THIS WARRANTY SHALL BE THE OWNER'S EXCLUSIVE REMEDY AGAINST FIRESTONE WITH RESPECT TO THE ROOF, AND FIRESTONE SHALL NOT BE LIABLE FOR ANY CONSEQUENTIAL OR INCIDENTAL DAMAGES. FIRESTONE AGENTS HAVE NO AUTHORITY TO GIVE WARRANTIES BEYOND THOSE PROVIDED IN THIS WARRANTY.

In March 1988, Firestone was first notified of leaks in the shopping center roof, and, between 1988 and 1990, Firestone responded to approximately 50 repair requests. Despite Firestone's attempts to patch the leaks, more leaks developed, and, on May 20, 1991, Firestone notified Prince William that it no longer would repair the leaks. Firestone contended that the leaks were not covered under the warranty.[3]

The evidence established that the leaks in the roof resulted from holes in the EPDM membrane, caused by contact between the membrane and the metal fasteners installed to secure the underlying insulation. Prince William's liability expert conceded that the membrane was being punctured by the fasteners; however, he opined that the punctures could have been prevented if a protective layer had been placed between the fasteners and the membrane. The expert explained that, after the roofing system's installation, the insulation began to compact and depress, causing the fasteners to protrude from the protective plates and puncture the membrane.

---

[3] On June 20, 1990, Jamestown Properties sold the shopping center to Prince William.

## III

Relying upon the limitation contained in paragraph 4(c) of the warranty, Firestone contends, as it did at trial, that, as a matter of law, it has no obligation under the warranty because the damage to the roof was caused by fasteners which it did not furnish. Prince William contends, on the other hand, relying primarily on the testimony of its liability expert, that the damage could have been prevented if Cole had placed a protective layer between the fasteners and the membrane. Thus, Prince William asserts, a jury issue was presented on causation.

■ The law respecting contract interpretation is well settled. When contract terms are clear and unambiguous, a court must construe them according to their plain meaning. *Foods First, Inc.* v. *Gables Associates*, 244 Va. 180, 182, 418 S.E.2d 888, 889 (1992); *Winn* v. *Aleda Const. Co.*, 227 Va. 304, 307, 315 S.E.2d 193, 194-95 (1984). The law will not insert by construction, for the benefit of a party, an exception or condition which the parties omitted from their contract by design or neglect. *Westbury Coal Mining* v. *J.S.& K. Coal*, 233 Va. 226, 229, 355 S.E.2d 571, 573 (1987). Moreover, a court must construe the words as written and not make a new contract for the parties. *Berry* v. *Klinger*, 225 Va. 201, 208, 300 S.E.2d 792, 796 (1983).

■ In the present case, the terms of the warranty are clear. Firestone agreed to repair any leaks caused by workmanship or materials it supplied. The warranty, however, further provided that Firestone would have no obligation if the leaks were caused by materials it did not furnish. The undisputed evidence established that the damage to the roof was caused by the metal fasteners, which punctured the EPDM membrane, and that the fasteners were not furnished by Firestone. Therefore, Firestone is not liable under its warranty.

In order to adopt the interpretation of the warranty urged by Prince William, this Court must insert into paragraph 4(c) a clause containing words to this effect: "unless such damage could have been prevented by the Firestone Authorized Roofing Applicator." As we have stated, however, a court cannot insert into a contract an exception or condition that the parties have failed to include.

## IV

We hold, therefore, that the trial court erred in failing to rule as a matter of law that, under the facts of this case, paragraph 4(c) of the warranty precluded Firestone's liability. Accordingly, we will reverse the trial court's judgment and enter final judgment in favor of Firestone.

*Reversed and final judgment.*